**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>CAESARS ENTERTAINMENT<br>OPERATING COMPANY, INC.,<br><br>                Alleged Debtor. | Chapter 11<br><br>Case No. 15-10047 (KG)<br><br>**Requested Objection Deadline:**<br>**At the hearing**<br><br>**Requested Hearing Date:**<br>**January 14, 2015 at a time to be**<br>**determined by the Court** |

**MOTION OF PETITIONING CREDITORS, PURSUANT TO**
**SECTION 105(a) OF THE BANKRUPTCY CODE AND BANKRUPTCY**
**RULE 1014(b), FOR AN ORDER STAYING ANY PARALLEL PROCEEDINGS**

Appaloosa Investment Limited Partnership I, OCM Opportunities Fund VI, L.P. and Special Value Expansion Fund, LLC (collectively, the "Petitioning Creditors"), holders of 10% Second-Priority Senior Secured Notes due 2018 (the "Second Lien Notes") issued under indentures dated December 24, 2008 and April 15, 2009 by alleged debtor Caesars Entertainment Operating Company, Inc. ("CEOC" or the "Debtor"), hereby seek the entry of an order, pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 1014(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), staying any later-filed, parallel chapter 11 cases that may be commenced by the Debtor, pending this Court's determination, upon motion by the Petitioning Creditors (or any other party in interest) and pursuant to Bankruptcy Rule 1014(b), regarding the appropriate venue in which any such cases may proceed. In support of this Motion, the Petitioning Creditors respectfully represent as follows:

**Preliminary Statement**

During the weeks leading up to the commencement of the above-captioned chapter 11 case, it was widely reported in the press that CEOC and certain of its affiliates were preparing to file voluntary chapter 11 petitions in order to implement a proposed restructuring prenegotiated with certain of its first lien bondholders.[1] On December 19, 2014, CEOC and its corporate parent, Caesars Entertainment Corporation ("Caesars Parent"), announced that CEOC and Caesars Parent had entered into a restructuring support agreement with certain holders of senior secured claims against CEOC, pursuant to which agreement CEOC is required to commence a chapter 11 case "on or after January 15, 2015, but no later than January 20, 2015."[2]

Due to the pendency of the instant case, any such filing by CEOC and/or any affiliate of CEOC in another bankruptcy court will necessitate a determination regarding venue (and the Petitioning Creditors intend to seek such a determination upon the Debtor's commencement of a voluntary case). Pursuant to Bankruptcy Rule 1014(b), this Court, as the court in which the case involving the Debtor was first filed, would have sole authority to determine the venue in which such case or cases should proceed. Bankruptcy Rule 1014(b) provides that this determination must be made "in the interest of justice or for the convenience of the parties." Fed. R. Bankr. P. 1014(b). The Petitioning Creditors believe – and, if necessary, will argue – that it is "in the interest of justice or for the convenience of the parties" for the Debtor's chapter 11 case (and any related cases) to remain in this Court.

Although the Petitioning Creditors have not received any communication from CEOC in the two days since their filing (despite reaching out), they nevertheless understand  that,

---

[1]   *See*, *e.g.*, David Gelles, *Caesars Unit Takes a Step Toward Chapter 11*, DealBook/N.Y. Times, http://dealbook.nytimes.com/2014/12/19/caesars-unit-takes-a-step-toward-chapter-11/ (last accessed Jan. 10, 2015).

[2]   *See* Caesars Entertainment Corp., Form 8-K (Dec. 19, 2014), at 3.

notwithstanding the pendency in this Court of the involuntary bankruptcy case which was filed on January 12, 2015, CEOC intends to file a voluntary bankruptcy petition in accordance with the timeframes contemplated in the RSA, which permit a filing as early as this Thursday, January 15, 2015.  Notably, the RSA does not speak to the jurisdiction in which any voluntary cases must be commenced.  One particular rumored jurisdiction is the United States Bankruptcy Court for the Northern District of Illinois which, as set forth more fully below, would not even be an appropriate venue but for a contrived affiliate filing.

The Northern District of Illinois is not a proper venue for a CEOC bankruptcy case, as venue is not proper under 28 U.S.C. § 1408(1), since CEOC is not an Illinois entity (it is incorporated in Delaware) and is neither the principal place of its business in the United States nor where its principal assets are located.  Accordingly, it appears that, in order to manufacture venue in Illinois for CEOC, some other entity that purports to be an affiliate of CEOC will first file for bankruptcy, notwithstanding that a bankruptcy case is already pending here in Delaware for that entity's affiliate – CEOC.  Thereafter, CEOC will file a bankruptcy case in Illinois seeking venue under 28 U.S.C. § 1408(2).

Given the apparent likelihood that the Debtor and its affiliates imminently will file parallel chapter 11 cases in another bankruptcy court, the Petitioning Creditors seek an order staying any such cases pending this Court's venue determination pursuant to Bankruptcy Rule 1014(b) and section 105(a) of the Bankruptcy Code.  Well-established practical and legal principles demonstrate that two bankruptcy cases involving the same debtor and the same debts should not proceed simultaneously.  This rule, first announced by the United States Supreme Court in *Freshman v. Atkins*, 269 U.S. 121 (1925), is based upon the fundamental bankruptcy principle that two estates consisting of the same property cannot coexist.  Absent a stay of any

parallel cases involving the Debtor, substantive and administrative confusion is certain to arise, with the estates, creditors and both courts incurring unnecessary expenses arising therefrom (and from inevitably duplicated effort in parallel fora).

Accordingly, to promote the efficient administration of the Debtor's chapter 11 case and prevent unnecessary confusion and expense, the Court should grant the relief sought herein.

## Background

Debtor, through its subsidiaries, owns, operates and/or manages 44 gaming and entertainment properties in 13 states and five countries.[3] Debtor's domestic businesses are national in scope and distribution, with major assets and operations located in New Jersey, Pennsylvania, Ohio, Maryland, Indiana, Illinois, Mississippi, Louisiana, Iowa, Missouri, Arizona, California and Nevada.[4] CEOC is incorporated in Delaware. Of the Debtor's subsidiaries as of August 14, 2014, (a) 84 were incorporated or registered in Delaware, (b) ten were incorporated or registered in New Jersey, (c) 73 were incorporated or registered in Nevada and (d) 92 were incorporated or registered in 13 other states and 17 foreign jurisdictions.[5] Moreover, of the 84 Debtor subsidiaries that are Delaware entities, 74 such entities are limited liability companies registered in Delaware.[6] At least one court has held that the location of a debtor's membership interest in a limited liability company, for purposes of determining location of principal assets as part of venue determination, was the state in which such limited liability company was registered. *See Montana Dep't of Revenue v. Blixseth (In re Blixseth)*,

---

[3]  *See* Caesars Entertainment Operating Co. Reaches Agreement with First Lien Noteholder Steering Committee on Debt Restructuring (Press Release) (Dec. 19, 2014), available at http://investor.caesars.com/releases.cfm.

[4]  *See* Caesars Entertainment Operating Company, Inc., Form 10-Q (Nov. 14, 2014), at 9; Leading Assets with Significant Scale, attached hereto as Exhibit B.

[5]  *See* Caesars Entertainment Operating Company, Inc., Form 10-Q (Aug. 14, 2014), at Ex. 21.

[6]  *See id.*

484 B.R. 360, 370-71 (B.A.P. 9th Cir. 2012). Thus, many of CEOC's principal assets (*i.e.*, its membership interests in its LLC subsidiaries) are located in Delaware for venue purposes.

Because the Debtor's domestic operations are widely distributed geographically, in all likelihood, so too are the employees and financial and trade creditors of the Debtor and its subsidiaries. Upon information and belief, most of the Debtor's largest creditors are Delaware companies or partnerships, and a large proportion of such creditors are located in the northeastern United States.

The Petitioning Creditors are holders of Second Lien Notes issued by the Debtor under an indenture dated April 15, 2009, and guaranteed by the Caesars Parent. Caesars Parent owns and controls the Debtor. Caesars Parent in turn is owned and controlled by two private equity firms, Apollo Global Management, LLC ("Apollo"), and TPG Global, LLC ("TPG"), and other co-investors who participated in the 2008 leveraged buyout of Caesars Parent. Like CEOC, Caesars Parent, Apollo and TPG are Delaware entities.

On January 12, 2015, the Petitioning Creditors filed an involuntary petition under chapter 11 of the Bankruptcy Code in this Court, commencing the Debtor's involuntary chapter 11 case in the District of Delaware.[7]

## Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

---

[7] For a detailed recitation of the facts and circumstances leading to the filing of the involuntary chapter 11 petition, including the numerous transactions by which the Sponsors and Caesars Parent dismantled CEOC's business and transferred its assets to themselves and affiliates out of the reach of CEOC's creditors, *see* the Motion for Appointment of Examiner with Access to and Authority to Disclose Privileged Materials, filed on January 12, 2015 (Docket No. 10) (the "Examiner Motion").

**Relief Requested**

By this Motion, the Petitioning Creditors seek the entry of an order, pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 1014(b), staying any later-filed, parallel chapter 11 case that may be commenced by the Debtor or its subsidiaries or affiliates, pending this Court's determination, pursuant to Bankruptcy Rule 1014(b), regarding the appropriate venue in which the Debtor's chapter 11 case shall proceed, substantially in the form attached hereto as Exhibit A.

**Basis for Relief**

If the Debtor were to commence parallel chapter 11 proceedings in another bankruptcy court, this Court, as the court in which the Debtor's chapter 11 case was first commenced, would have the sole authority to determine the district in which the Debtor's bankruptcy case should proceed. *See* Fed. R. Bankr. P. 1014(b). Where two bankruptcy cases are filed by or against the same debtor in different courts, the court in which the first case was filed determines which forum is appropriate, with reference to two factors: (a) "the interest of justice" and (b) "the convenience of the parties." *Id.* Bankruptcy Rule 1014(b), titled "Procedure When Petitions Involving the Same Debtor or Related Debtors are Filed in Different Courts," provides as follows:

> If petitions commencing cases under the Code … are filed in different districts by, regarding, or against … the same debtor …, *the court in the district in which the first-filed petition is pending* may determine, in the interest of justice or for the convenience of the parties, the district or districts in which any of the cases should proceed. The court may so determine on motion and after a hearing …. *The court may order the parties to the later-filed cases not to proceed further until it makes the determination.*

Fed R. Bankr. P. 1014(b) (emphasis added).[8]

The Court should issue an order staying any later-filed, parallel chapter 11 case involving the Debtor, pending this Court's determination regarding venue, because allowing two chapter 11 cases involving the same debtor and the same debts to proceed simultaneously is both practically untenable and contrary to applicable law. Pursuant to Bankruptcy Rule 1014(b), this Court has discretion to issue an order staying any parallel case subsequently filed in another bankruptcy court until this Court issues a ruling regarding venue. *See* Fed. R. Bankr. P. 1014(b). The final sentence of Bankruptcy Rule 1014(b) provides that the court in which the first-filed bankruptcy case is pending "may order the parties to the later-filed cases not to proceed further until it makes the determination" regarding venue. Fed. R. Bankr. P. 1014(b).[9] In addition,

---

[8] As a threshold matter, venue for the Debtor's chapter 11 case (and any chapter 11 case that may be filed by an affiliate or subsidiary of the Debtor) is proper in the District of Delaware. Section 1408 of Title 28 ("Section 1408") provides, in relevant part, that "a case under title 11 may be commenced in the district court for the district … in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement …." 28 U.S.C. § 1408(1). Section 1408 "is written in the disjunctive making venue proper in any of the listed locations." *In re Dunmore Homes, Inc.*, 380 B.R. 663, 670 (Bankr. S.D.N.Y. 2008). Courts within the District of Delaware, and in most other jurisdictions, follow the well-established rule that a corporation's "domicile" for purposes of venue is the state in which such corporation is incorporated. *E.g.*, *In re Innovative Commc'n Co.*, 358 B.R. 120, 125 (Bankr. D. Del. 2006) ("Venue is appropriate in the state of incorporation, 28 U.S.C. § 1408(1), so venue is proper in Delaware with respect to the corporate Debtors."). Thus, in this case, venue of CEOC's case is proper in Delaware because CEOC is incorporated in Delaware. Venue is proper for any subsidiaries or affiliates of the Debtor because each is an affiliate of CEOC. *See* 28 U.S.C. § 1408(2) ("… a case under title 11 may be commenced in the district court for the district … in which there is pending a case under title 11 concerning such person's affiliate….").

[9] This formulation of Bankruptcy Rule 1014(b) became effective on December 1, 2014. The relevant portion of the prior rule provided as follows: "Except as otherwise ordered by the court in the district in which the petition filed first is pending, the proceedings on the other petitions shall be stayed by the courts in which they have been filed until the determination is made." According to one commentator, the rule was amended "to resolve various procedural issues that arose under the prior wording," such as where the automatic

-7-

section 105(a) of the Bankruptcy Code gives the Court authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).[10]

Allowing chapter 11 cases to proceed in parallel is procedurally untenable and contrary to well-established bankruptcy principles. In *Atkins*, a petitioner filed a voluntary bankruptcy petition at a time when an earlier bankruptcy petition, filed by the same debtor seven years earlier, remained pending. *Atkins*, 269 U.S. at 122. The district court denied the debtor's request for a discharge of all debts owed to creditors listed on the debtor's original petition (but granted a discharge with respect to creditors newly-listed on the second petition). *Id.* On appeal from the circuit court (which affirmed the ruling), the United States Supreme Court affirmed, holding that

---

(continued…)

    imposition of the stay under Bankruptcy Rule 1014(b) caused the cancellation of a scheduled meeting pursuant to section 341(a) of the Bankruptcy Code and led to confusion regarding when the period for filing dischargeability complaints began to run, as occurred in *Coston v. Bank of Malvern (In re Coston)*, 987 F.2d 1096 (5th Cir. 1992). *See* 9 Collier on Bankruptcy ¶ 1014.04 n.7 (16th ed. 2014). As the plain language of the rule makes clear, the amendment does not limit the Court's ability to impose a stay pending its venue determination. Rather, the new language merely clarifies that the decision regarding whether to stay the later proceeding is committed to the Court's sound discretion.

[10] Section 105(a) of the Bankruptcy Code gives the Court latitude to implement relief otherwise available under applicable bankruptcy law. *See In re Combustion Eng'g, Inc.*, 391 F.3d 190, 236 (3d Cir. 2004) (Section 105(a) of the Bankruptcy Code "has been construed to give a bankruptcy court 'broad authority' to provide equitable relief appropriate to assure the orderly conduct of reorganization proceedings," as long as such relief is "exercised within the parameters of [the Bankruptcy Code]."). Although the new language of Bankruptcy Rule 1014(b) appears to contemplate that a determination of whether to stay later-filed, parallel proceedings will occur after a second bankruptcy case involving the same debtor is actually filed, section 105(a) of the Bankruptcy Code gives this Court authority to order such a stay preemptively where, as here, the filing of parallel bankruptcy cases is imminent and the immediate stay of such proceedings is necessary "to assure the orderly conduct" of the Debtor's "reorganization proceedings." As set forth in greater detail below, the relief requested herein is consistent with, and tailored to implement, applicable bankruptcy law, including the United States Supreme Court's ruling in *Freshman v. Atkins*, 269 U.S. 121 (1925), in which the Court held that two bankruptcy cases involving the same debtor and the same debts cannot proceed simultaneously.

"the pendency of the first application precluded a consideration of the second in respect of the same debts." *Id.*

Most courts applying *Atkins* and its progeny have interpreted the holding of *Atkins* to mean that "maintaining simultaneous bankruptcy cases is *per se* barred." *In re Brown*, 399 B.R. 162, 166 (Bankr. W.D. Va. 2009) (citations omitted) (further stating that "[i]n general, the majority cites … *Atkins* for the proposition that a debtor may never maintain simultaneous cases under the Bankruptcy Code"); *In re Caperoads Plaza L.P.*, 154 B.R. 614, 615 (Bankr. D. Mass. 1993) ("[E]ver since *Freshman v. Atkins* …, it has generally been held that simultaneous cases are prohibited."). Some courts, however, have more narrowly interpreted *Atkins* as holding only that "two cases *which seek to discharge the same debt* cannot be pending simultaneously." *Brown*, 399 B.R. at 167 (citation and quotation marks omitted) (emphasis in original); *e.g.*, *In re Jackson*, 108 B.R. 251, 252 (E.D. Cal. 1989) ("The weight of authority holds that once a bankruptcy case is filed, a second case which affects the same debt cannot be maintained."); *In re Wilson*, 390 B.R. 899, 901 (Bankr. N.D. Ind. 2008) (case decided by the Seventh Circuit Court of Appeals interpreting *Atkins* "may or may not be an absolute ban on a debtor having two bankruptcy cases pending at the same time. Nonetheless, it clearly prohibits a debtor from having two cases pending at the same time when those cases have debts in common."). Because any duplicative bankruptcy cases filed by the Debtor and its affiliates would involve precisely the same debts, even under the more narrow interpretation of *Atkins*, any such cases could not be permitted to proceed simultaneously with the instant case. Accordingly, the venue issue posed by such parallel bankruptcy proceedings would have to be resolved by this Court. Accordingly, to eliminate uncertainty and potential procedural complications, and to

promote the efficient administration of the Debtor's chapter 11 case, the Court should stay any potential parallel chapter 11 case of the Debtor or its subsidiaries or affiliates.

The Supreme Court's decision in *Atkins* is complemented by the "single estate rule," recognized by numerous courts, which provides that two bankruptcy cases concerning the same debtor and the same debts cannot proceed simultaneously because multiple estates consisting of the same property cannot coexist.[11]  *See In re Parson*, No. 01-73786, 2007 WL 3306678, at *12 (Bankr. E.D. Va. Nov. 6, 2007) ("[T]he 'single estate rule' … holds that a debtor cannot maintain simultaneous bankruptcy cases because [a] debtor possesses only one estate for purposes of trusteeship.") (citations and quotation marks omitted); *Turner v. Citizens Nat'l Bank of Hammond (In re Turner)*, 207 B.R. 373, 378 (B.A.P. 2d Cir. 1997) ("the filing of simultaneous petitions is contrary to the obvious contemplated function of the Bankruptcy Code to resolve a debtor's financial affairs by administration of a debtor's property as a single estate under a single chapter within the code") (citations and quotation marks omitted); *Brown*, 399 B.R. at 168 ("[P]roperty cannot be an asset[ ] of both estates simultaneously.") (quoting *Bateman v. Grover (In re Berg)*, 45 B.R. 899, 903 (B.A.P. 9th Cir. 1984)).

The issuance of an order staying any parallel chapter 11 cases filed by the Debtor and/or any of the Debtor's affiliates or subsidiaries, pending determination of the venue issue, also is appropriate for pragmatic reasons.  Allowing both cases to proceed in the interim would cause

---

[11]  As in voluntary bankruptcy cases, an estate is created upon the filing of an involuntary bankruptcy petition.  *See* 11 U.S.C. § 541(a) ("The commencement of a case under section 301, 302, *or 303* [dealing with involuntary cases] of this title creates an estate.") (emphasis added); *In re Sweports, Ltd.*, 476 B.R. 540, 545 (Bankr. N.D. Ill. 2012) ("[T]he filing of an involuntary case also creates a bankruptcy estate, just as the filing of a voluntary case does[.]") (citing 11 U.S.C. § 541(a)); *In re E. D. Wilkins Grain Co.*, 235 B.R. 647, 649 (Bankr. E.D. Cal. 1999) ("While no order for relief is entered upon the filing of an involuntary petition, its filing creates an estate consisting of all of the involuntary debtor's property.") (citing 11 U.S.C. §§ 303(h), 541(a)).

confusion and subject the Debtor, creditors and both affected Courts to unnecessary costs arising from the duplication of efforts.  *See Frank v. Mannucci (In re Mannucci)*, No. 1:12-BK-07138, 2013 WL 3294093, at *3 (Bankr. M.D. Pa. June 28, 2013) ("[E]ven courts that reject a *per se* bar to maintaining simultaneous cases permit the second case to go forward only when it does not interfere with the administration of the first case.… 'The problems that simultaneous cases raise include confusion among creditors as to the necessity and procedure for filing of claims, difficulties in determining in which estate assets belong, and the entitlement of the … trustee and other professionals to fees and commissions.'") (quoting *In re Hodruski*, 156 B.R. 353, 356 (Bankr. D. Mass. 1993)).  Thus, in light of (a) well-settled bankruptcy principles prohibiting the simultaneous prosecution of multiple cases concerning the same debtor and the same debts and (b) the unnecessary costs and complications that the simultaneous pendency of multiple parallel chapter 11 cases involving the Debtor would create, the Court should exercise its discretion under section 105(a) of the Bankruptcy Code and Bankruptcy Rule 1014(b), and stay any such later-filed parallel chapter 11 cases pending the Court's determination regarding venue.

*Remainder of page intentionally left blank*

WHEREFORE, the Petitioning Creditors respectfully request that the Court: (i) enter an order substantially in the form attached hereto as <u>Exhibit A</u>, granting the relief requested herein; and (ii) grant such other and further relief to the Petitioning Creditors as the Court may deem proper.

Dated: January 13, 2015
Wilmington, Delaware

Respectfully submitted,

*/s/ Robert F. Poppiti, Jr.*
Robert Brady (No. 2847)
Edmon Morton (No. 3856)
Robert F. Poppiti, Jr. (No. 5052)
YOUNG CONAWAY STARGATT &
TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

-and-

Bruce Bennett
James O. Johnston
Sidney P. Levinson
Joshua M. Mester
Monika S. Wiener
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 489-3939
Facsimile: (213) 243-2539

Attorneys for Appaloosa Investment Limited Partnership I, OCM Opportunities Fund VI, L.P. and Special Value Expansion Fund, LLC