# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CAESARS ENTERTAINMENT OPERATING COMPANY, INC., | ) Case No. 15-10047 (KG) |
| Alleged Debtor. | ) **Requested Objection Deadline:** At the Hearing |
| | ) **Requested Hearing Date:** January 14, 2015 at a time to be Determined by the Court |

### OBJECTION OF CAESARS ENTERTAINMENT OPERATING COMPANY, INC.TO (1) MOTION OF PETITIONING CREDITORS FOR AN ORDER STAYINGANY PARALLEL PROCEEDINGS AND (2) EMERGENCY MOTION TO SHORTEN NOTICE AND SCHEDULING AN EXPEDITED HEARING ON MOTION TO STAY ANY PARALLEL PROCEEDINGS

The Petitioners' filings highlight the true aim of their involuntary bankruptcy petition against CEOC, which has nothing to do with seeking the protection of a bankruptcy court. By their own admission, the Petitioners—three hedge fund junior noteholders, one of which acquired its debt only a few months ago—have known for at least a month that CEOC would commence a voluntary bankruptcy between January 15th and January 20th. CEOC has publicly disclosed its intent to commence voluntary proceedings for itself and nearly 180 subsidiaries to implement a complex restructuring of its more than $18 billion capital structure—a restructuring that, after months of negotiation, has the support of more than 80% of senior noteholders, among other creditors.[1] In an effort to gain leverage in CEOC's imminent voluntary bankruptcy, Petitioners filed an improper involuntary petition in this Court on January 12th against CEOC only, alleging that CEOC is generally failing to pay its debts when due because interest on

---

[1] As of today, the restructuring also has the support of 19% of the Debtors' first lien bank lenders and 5% of second lien creditors.

certain junior funded debt was not paid on December 15, 2014, despite CEOC having—and still having today—the benefit of a 30-day grace period  The involuntary petition is baseless, and CEOC will move to dismiss it within the 21-day deadline for a response.  FED. R. BANKR. P. 1101(b).

While CEOC is the only subject of the involuntary petition, Petitioners' filings put at risk a much larger enterprise.  CEOC and nearly 180 of its affiliates (the "Debtors"), an integrated corporate group with 36,000 employees that owns, operates, or manages 38 casinos in 14 states throughout the United States and in five countries, will be filing voluntary bankruptcy petitions in the Northern District of Illinois tomorrow, January 15th.  They also plan to continue honoring their payment obligations by seeking critical first day relief necessary for the Debtors to pay their employees, honor all customer programs, and continue normal business operations.  Now, even before the Debtors have filed in Chicago, Petitioners recklessly ask this Court to stay yet-to-be-filed voluntary bankruptcy proceedings for this multi-billion dollar enterprise in an effort to wreak havoc on the orderly process the Debtors, their professionals, and the many consenting stakeholders have been preparing for months to protect the Debtors' business for the benefit of all creditors.  Petitioners seek this extraordinary relief on less than 24 hours' notice, while the Debtors' counsel and senior management, along with various other stakeholders, are in (or in transit to) Chicago preparing for the voluntary filing and continuing negotiations.

The Motion to Stay must be denied; it has no basis in law or fact and flies in the face of public policy.  First, the Petitioners provide no justification whatsoever for their unprecedented request, especially given the incredibly high bar to obtain preliminary injunctive relief in federal court.  The Petitioners claim that they filed their involuntary petition "to prevent any further transactions that diminish [CEOC's] estate, and to obtain the aid of this Court in assuring that all

2

parties will be dealt with fairly in any restructuring." (Statement in Support of Petition at 3.) Petitioners' stated intent is belied by the fact that CEOC has signed and publicly disclosed a restructuring support agreement that commits the company to pursue a reorganization to protect its assets. They insinuate, without and basis, that the Bankruptcy Court in the Northern District of Illinois somehow would be incapable of protecting the estate's assets or dealing fairly with creditors.

While the Debtors agree that the pendancy administration of two separate, simultaneous bankruptcy proceedings must be properly addressed, that hardly means the voluntary proceedings of almost 180 Debtors, filed in their chosen forum should be stayed during the gap period following an improper involuntary petition against a single Debtor. In any event, that is not an issue that should be, or even can be, decided now. The Bankruptcy Code provides mechanisms for creditors and other parties in interest to contest venue or other aspects of a voluntary bankruptcy proceeding *after* the cases are commenced. Bad faith, improper involuntary petitions by holders of approximately $41 million in claims cannot and must not be used as an end-run around the Debtors' rights to commence a voluntary, pre-arranged chapter 11 reorganization with the support of holders of billions of dollars of claims.

Second, the motion is premature. The parties' venue dispute will not ripen until *after* CEOC files for bankruptcy in Chicago. Until then, Bankruptcy Rule 1014(b) and its discretionary stay provision do not apply. When the issue does ripen, this Court will have several sensible avenues available, none of which involves staying the Debtors' voluntary proceedings. The Court may decide to dismiss the involuntary petition or to abstain if it determines that "the interests of creditors and the debtor would be better served by such

dismissal or suspension." *See* 11 U.S.C. §§ 303, 305. The Court alternatively may transfer the involuntary petition to the Northern District of Illinois as the more appropriate venue.

What the Court should not do is preemptively stay a voluntary proceeding in the Debtors' chosen forum that has been planned for months, deprive a sister court of jurisdiction to decide and grant relief on critical first day motions, cast a pall of uncertainty over the Debtors' business and operations, and disrupt the Debtors' efforts to reorganize in a responsible, orderly way. While the Petitioners will suffer no prejudice by waiting to be heard until their stay motion is ripe, the Debtors cannot afford to divert resources away from their imminent planned bankruptcy filing to address a manufactured emergency on such a critical issue.

## Argument

### I.    THE COURT SHOULD NOT STAY DEBTORS' VOLUNTARY CASES

The Petitioners acknowledge that "this Court has discretion" to determine whether to stay Debtors' voluntary cases. (Mot. for Stay at 7.) Indeed, Bankruptcy Rule 1014(b) was recently amended so that later-filed bankruptcy proceedings are no longer automatically stayed during venue disputes. Instead, a bankruptcy court must specifically find that a stay is warranted before imposing one. *See* Fed. R. Bankr. P. 1014(b).

While Petitioners agree that two bankruptcy cases should not proceed in parallel in different forums, that does not mean that the Chicago action must be stayed. When these issues are ripe, this Court will have a number of reasonable options available that do not include calling a halt to the Debtors' restructuring efforts in Chicago, including dismissing the involuntary petition, abstaining, or transferring this case to Chicago.

The Petitioners have not made any showing that a stay of Debtors' voluntary cases is either necessary or appropriate while the Debtors and these junior creditors litigate whether the involuntary proceeding should be dismissed or, if not, the proper venue for these cases. The

4

Petitioners vaguely argue that failing to stay the voluntary cases preemptively might lead to "uncertainty and potential procedural complications," and could "cause confusion and subject [CEOC], creditors and both affected Courts to [*sic*] unnecessary costs arising from the duplication of efforts." (Mot. for Stay at 9–11.) Leaving aside that any purported confusion or uncertainty would be of their own doing, Petitioners fail to identify any specific uncertainties, complications, confusion or costs that would be avoided by a preemptive stay. Nor do they explain why, absent a stay, a bankruptcy court in Chicago would "be faced with uncertainty about what type of relief can be entered for a true megacase with immense operations." (Motion to Shorten at 5.)

Instead, Petitioners' filing smacks of a blatant attempt to deprive the Debtors of their chosen forum to implement a pre-arranged restructuring with holders of billions of dollars of claims. The Debtors' planned voluntary filing in Chicago is not a "fabricated venue tactic." (Motion to Shorten at 6.) The principal assets and operations of Debtor Des Plaines Development Limited Partnership consist of a casino and hotel staffed by 900 employees and located in Joliet, Illinois, which is within the Northern District of Illinois. Similarly, Debtor Southern Illinois Riverboat/Casino Cruises, Inc. is incorporated in Illinois, employs 550 people at its Illinois hotel and casino, and has no material assets outside of Illinois. Because these entities can properly file in the Northern District of Illinois, venue for any affiliates of these entities—including CEOC, their ultimate parent—is appropriate. 28 U.S.C. § 1408(2); *In re Enron Corp.*, 274 B.R. 327, 341 (Bankr. S.D.N.Y. 2002).

The Debtors have tremendous respect for the Delaware bankruptcy court, and did not select an alternative forum lightly. The Midwest is an important hub of Debtors operations, including seven of the Debtors' 27 owned or operated casinos, more than any other region. Two

of those casinos are in the Chicagoland area, each less than 40 miles from the Bankruptcy Court in Chicago. (In contrast, the Debtors have no casinos in Delaware.) As a matter of public policy, bankruptcy courts favor the Debtors' choice of venue, and the baseless involuntary petition should not be used for the improper purpose of upsetting that choice. *See, e.g.*, *In re Rehoboth Hospitality, LP*, No. 11-12798 KG, 2011 WL 5024267, at *3 (Bankr. D. Del. Oct. 19, 2011) ("Generally, there is a presumption in favor of maintaining the debtor's choice of forum.") (citing cases).

But that is all for another day. The only issue before this Court is whether it should preemptively stay the Debtors' voluntary cases filed in their chosen forum. Not only have Petitioners failed to make any showing in support of such extraordinary relief, but a stay would be disastrous for Debtors and their estates. Tomorrow, the Debtors will file various "first day" motions critical to maintaining Debtors' operations and maximizing the value of Debtors' estates. The Northern District of Illinois will be the only bankruptcy court with jurisdiction to provide this essential relief, which includes authority to pay employees and to access cash that is necessary to run Debtors' businesses. These petitioning hedge funds seem primarily worried about whether proceedings in Chicago will hurt their venue arguments once they become ripe. (*See* Mot. to Shorten at 5–6.) While the petitioning hedge funds are willing to cavalierly put at risk nearly 180 companies with 36,000 employees and ongoing operations, all in the service of overturning the Debtors' choice of forum, both the Debtors and this Court have broader responsibilities. There is simply no basis to allow these junior creditors to turn the chapter 11 process on its head to the detriment of Debtors, and their thousands of employees and other creditors. *See, e.g.*, *In re Bagel Bros. Bakery & Deli, Inc.*, 220 B.R. 1 (Bankr. W.D.N.Y. 1998) (noting the injustice of allowing a lawyer "to suddenly end all hopes of reorganization (and put

workers out of jobs and countless other unthinkable consequences) simply by filing the Rule 1014 motion in the remote court on the eve of any seminal hearing in the reorganization case," which injustice cannot be remedied by an emergency hearing in the remote court "on a moment's notice").

## II.  EMERGENCY RELIEF IS UNNECESSARY AND WOULD BE HIGHLY PREJUDICIAL

Petitioners have made no showing that this Court should enter an unprecedented stay of Debtors' voluntary bankruptcy case in their chosen forum.  But that is only the beginning of the problems with their bogus motion.  Another fatal flaw is that their motion is not even ripe.  The Petitioners purport to seek relief under Federal Rule of Bankruptcy Procedure 1014(b).  (*See* Mot. for Stay at 6.)  But Rule 1014(b) applies only "[i]f petitions commencing cases under the Code or seeking recognition under chapter 15 *are filed* in different districts" regarding the same debtor.  *Id.* (emphasis added).  As of today, only one bankruptcy petition pertaining to CEOC has been filed—the bad faith involuntary petition pending in this Court.  As the Petitioners' counsel argued just yesterday, when considering a request for a stay "based upon pleadings that haven't yet been filed" a court should "not listen to speculation, what is really speculation, about things that might or might not happen and certainly haven't happened yet."  1/13/15 Hr'g Tr. in *UMB Bank v. Caesars Entertainment Corp., et al.*, No. 10393-VCG (Del. Ch.).

Nor is the preemptive relief the Petitioners now seek contemplated by Bankruptcy Rule 1011(e), which provides that, besides a motion contesting an involuntary petition, "[n]o other pleadings shall be permitted."  In substance, the Petitioners' motion amounts to a remarkable and unprecedented request for a temporary restraining order or preliminary injunction against bankruptcy filings that have not yet been made.  By instead filing their request as an improper premature motion for a stay, the Petitioners are attempting to circumvent the

procedural safeguards of the adversary proceeding a TRO or PI would require—safeguards that are all the more important in the context of an involuntary petition seeking to intrude on the Debtors' ability to determine when and where to file for bankruptcy.  *See,* Fed. R. Bankr. P. 7001(7) (providing that any "proceeding to obtain an injunction or other equitable relief" is an adversary proceeding).  Petitioners have made no attempt to meet the high burden of justifying a TRO or PI.

The Motion to Shorten should also be denied, as the Petitioners have not articulated any justification for obtaining such extraordinary relief on 24-hours' notice.  They concede they have known for nearly a month that CEOC intended to file for bankruptcy between January 15 and January 20.  (*See* Mot. to Shorten at p.3 & n.2.)  Yet, they waited until late on January 13th to request an expedited hearing on their Motion to Stay on January 14th.  As Petitioners are well aware, the Debtors will be severely prejudiced if the Court holds a hearing on January 14.  The Debtors' key bankruptcy counsel already are in Chicago to prepare for the voluntary filings and first day hearing.  To attend a hearing in Delaware the day before a filing in Chicago would be a tremendous burden and needless distraction.

## Conclusion

While Petitioners claim to have filed their involuntary petition to protect estate assets and ensure that all stakeholders will be dealt with fairly, their true motives are less charitable.  The unprecedented relief they seek will harm the Debtors and their thousands of employees and creditors for no reason whatsoever—other than to afford these junior creditors some hold up leverage.  There is simply no legal or factual basis for this Court to enjoin the Debtors from filing their long-planned voluntary petitions for bankruptcy in the Northern District of Illinois and seeking appropriate relief in that forum.

| | |
|---|---|
| Dated: January 14, 2015<br>Wilmington, Delaware | */s/ Domenic E. Pacitti*<br>Domenic E. Pacitti (DE Bar No. 3989)<br>**KLEHR HARRISON HARVEY BRANZBURG LLP**<br>919 N. Market Street, Suite 1000<br>Wilmington, Delaware 19801<br>Telephone:    (302) 426-1189<br>Facsimile:    (302) 426-9193<br>Email: dpacitti@klehr.com<br><br>- and -<br><br>Morton Branzburg (*pro hac vice* pending)<br>**KLEHR HARRISON HARVEY BRANZBURG LLP**<br>1835 Market Street, Suite 1400<br>Philadelphia, Pennsylvania 19103<br>Telephone:    (215) 569-2700<br>Facsimile:    (215) 568-6603<br>Email: mbranzburg@klehr.com<br><br>- and -<br><br>James H.M. Sprayregen (*pro hac vice* pending)<br>David R. Seligman, P.C. (*pro hac vice* pending)<br>**KIRKLAND & ELLIS LLP**<br>300 North LaSalle<br>Chicago, IL 60654<br>Telephone: (312) 862-7066<br>Facsimile: (312) 862-2200<br>Email: jsprayregen@kirkland.com<br>            david.seligman@kirkland.com<br><br>-and- |

Paul M. Basta, P.C. (*pro hac vice* pending)
Nicole L. Greenblatt (*pro hac vice* pending)
Christopher Greco (*pro hac vice* pending)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:     (212) 446-4900
Email: paul.basta@kirkland.com
          christopher.greco@kirkland.com
          nicole.greenblatt@kirkland.com

Counsel to Caesars Entertainment Operating Company, Inc.