**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CAESARS ENTERTAINMENT OPERATING COMPANY, INC., | ) Case No. 15-10047 (KG) |
| Alleged Debtor. | ) **Requested Objection Deadline:** |
| | ) At the Hearing |
| | ) |
| | ) **Requested Hearing Date:** |
| | ) January 15, 2015, at the earliest practicable time |

**OBJECTION OF CAESARS ENTERTAINMENT OPERATING COMPANY, INC. TO MOTION AND RENEWED MOTION OF PETITIONING CREDITORS FOR AN ORDER ESTABLISHING VENUE**

Continuing their campaign to hijack the long-planned voluntary bankruptcy filings of CEOC and nearly 180 of its affiliates (the "Debtors") in Chicago, Petitioners now seek to use their improperly filed involuntary petition to deprive all of the Debtors of their chosen bankruptcy forum. While Debtors' counsel is well aware of this Court's ability to handle a case of this magnitude, the Chicago bankruptcy court is equally adept, and other factors weigh in favor of a Chicago venue. Despite their persistence, Petitioners cannot pull Debtors' chapter 11 filings into this Court.

First, Petitioners filed an involuntary petition but it is wholly improper. Petitioners purport to base their involuntary on a missed December interest payment by CEOC. But their pretext becomes obvious as they refused to even wait out the applicable 30-day grace period under the indenture. Instead, they filed the involuntary just ahead of Debtors' long-planned chapter 11 filings that Petitioners admit they knew for some time were coming in mid-January. (*See* Emergency Mot. at 3.) Because it is baseless, Debtors will move to dismiss the involuntary petition within the permitted 21-day period.

Next, Petitioners sought to stay the yet-to-be filed voluntary proceedings in Chicago. The request was not only premature but wholly unnecessary. During the period between the involuntary filing and this Court's ruling on Debtors' planned motion to dismiss, there is no risk that this Court or the Northern District of Illinois could issue conflicting orders. *Cf.* Report of Advisory Committee on Bankruptcy Rules on Rule 1014(b) ("The accompanying stay provision [of Rule 1014(b)] is intended to prevent the entry of inconsistent orders while the venue situation is resolved by the court."). Far from seeking necessary protection, the stay motion was filed to derail the Debtors' voluntary petitions before they were even filed or critical first-day motions could be heard.

Now, Petitioners seek to transfer the Debtors' voluntary petitions to this Court. Just as the involuntary petition has nothing to do with seeking bankruptcy protection, and the stay motion has nothing to do with preventing inconsistent orders, this motion has nothing to do with proper venue. Instead, Petitioners filed this motion to further obstruct the Debtors' orderly reorganization and seize control—as junior creditors with claims that represent a tiny fraction of an $18 billion restructuring with the support of creditors representing $6.4 billion of debt. Highlighting the weakness of their position, Petitioners argue that Delaware is a convenient forum despite the fact that it is not as convenient as Chicago *even as to them*: two of three Petitioners as well as their lead counsel are located in California. Petitioners cannot articulate a single legitimate reason why the Debtors' bankruptcy cases must be transferred from Chicago. To the contrary, the interest of justice and fundamental fairness dictate that the Debtors' selection of venue should be respected.

**Argument**

I.     **THE DEBTORS' CHOICE OF VENUE IS ENTITLED DEFERENCE**

Despite their bald assertion that the Debtors are "manufactur[ing] venue" (Mot. at 15), Petitioners do not appear to dispute that venue in the Northern District of Illinois is proper. The principal assets and operations of Debtor Des Plaines Development Limited Partnership consist of a casino staffed by 900 employees and located in Joliet, Illinois, within the Northern District of Illinois. Accordingly, the venue provision of 28 U.S.C. § 1408(1) is satisfied, and any affiliates—including their ultimate parent CEOC—may properly file in Chicago under 28 U.S.C. § 1408(2). *See, e.g., In re Enron Corp.*, 274 B.R. 327, 341 (Bankr. S.D.N.Y. 2002). The Debtors' ties to Illinois run deeper, including that Debtor Southern Illinois Riverboat/Casino Cruises, Inc. is incorporated in Illinois, and employs 550 people at its Illinois hotel and casino.

Indeed, Chicago is a center point of the Debtors' operations and a sensible forum for their bankruptcy proceedings. It is the largest city in the Midwest region, where seven of the Debtors' 27 owned or operated casinos are located, more than any other region in the United States. Indeed, the Chicago bankruptcy court is less than 40 miles away from two of the Debtors' significant casinos. CEOC and its affiliates also have approximately 11,000 employees in the Midwest states of Illinois, Indiana, Iowa, Missouri and Ohio, including approximately 2,200 union members. Debtors' Midwest properties account for over $1 billion in annual revenue.

The Debtors' selection of a proper forum is entitled to deference. In fact, the very case on which Petitioners primarily rely, *In re Enron Corp.*, 274 B.R. 327 (Bankr. S.D.N.Y.), recognized that "[a] debtor's choice of forum is entitled to great weight if venue is proper," and rejected an attempt to disrupt that choice. *Id.* at 342. As the *Enron* court cautioned, "[t]ransferring venue of a bankruptcy case is not to be taken lightly." *Id.* at 342. "Where a transfer would merely shift the inconvenience from one party to the other, or where after

3

balancing all the factors, the equities leaned but slightly in favor of the movant, the [debtor's] choice of forum should not be disturbed." *Id.* at 342-43 (citation omitted). This Court has acknowledged the same black letter principle. *See In re Rehoboth Hosp. LP,* No. 11-12798 (KG), 2011 WL 5024267, *3 (Bankr. D. Del. Oct. 19, 2011) (Gross, J.) ("Generally, there is a presumption in favor of maintaining the debtor's choice of forum."). There is simply no basis to deviate from this well-established rule here.

## II.  VENUE IN THE NORTHERN DISTRICT OF ILLINOIS SERVES THE INTERESTS OF JUSTICE AND THE CONVENIENCE OF THE PARTIES.

Rule 1014(b) requires a court to consider "the interest of justice" and "the convenience of the parties" to determine the better among competing forums. Petitioners bear the burden of showing by a preponderance of the evidence that the transfer of venue is warranted. *Enron*, 274 B.R. at 342. They cannot do so here as every recognized factor points towards Chicago as the more just and convenient forum. In these circumstances, the Debtors' choice should prevail.

### A.  The interest of justice strongly favors the Northern District of Illinois.

The "interest of justice" points strongly to Chicago. This factor evaluates whether the transferring venue would promote the efficient administration of the bankruptcy estate, judicial economy, timeliness, and fairness. *Enron Corp.*, 274 B.R. at 343. Removing the Debtors' cases from Chicago would promote none of these goals, and in fact would work a fundamental injustice on the Debtors.

No efficiencies in administration of the Debtors' bankruptcy cases would be gained by removing them from Chicago. To read Petitioners' motion, one might be left with the impression that Chicago, unlike Delaware, is *not* "an easily-accessible global financial center," or an "advantageous location for interested parties to participate in court proceedings and conduct negotiations, as well as for the [Debtors] to access capital markets as necessary to

4

successfully reorganize." (Mot. at 3.) In fact, Chicago is both a transportation and a financial hub. In the context of the present dispute, Petitioners' citation to *In re Qualteq, Inc.*, No. 11-12575, 2012 WL 527669 (Bankr. D. Del. Feb. 16, 2012), (*see* Mot. at 11) is curious for a number of reasons. First, *Qualteq* involved a case that was *transferred to Chicago* from the District of Delaware based, among other factors, on the presence of debtors' counsel there. *Id.* at *6. The *Qualteq* court "reject[ed] categorically the notion that any practice or experience of this Court serves as a basis under these circumstances" to situate venue in Delaware, and went on to explain that "there is no reason why a Chicago bankruptcy court could not 'deal with a complex bankruptcy.'" *See id*. at *7. Petitioners posit no argument to the contrary.

Other considerations, hardly addressed by Petitioners, demonstrate that "the interest of justice" in this case counsels against a transfer. For example, the Debtors' forum choice arises out of a months-long negotiation process that resulted in a restructuring support agreement that has garnered the support of more than 80% of the senior noteholders, 19% of the first lien banks, and 5% of the second lien creditors representing roughly $6.4 billion of debt. The Debtors have demonstrated their ability to generate consensus, and have selected Chicago as their preferred locus of further negotiations. Permitting three junior creditors to dictate fundamental decisions such as where the Debtors' bankruptcy cases should proceed would be a patent injustice.

      **B.**      **The convenience of the parties favors the Northern District of Illinois.**

The convenience of the parties also favors Chicago. When evaluating the "convenience of the parties," courts consider many factors, among them: (1) proximity of creditors of every kind to the court; (2) the proximity of the debtor to the court; (3) the proximity of witnesses necessary for the administration of the estate; (4) the location of the debtor's assets; and (5) the economic administration of the estate. *See In re Innovative Commc'n Co., LLC*, 358 B.R. 120,

126 (Bankr. D. Del. 2006).[1] Under these factors, Chicago clearly represents a convenient forum for the Debtors' bankruptcy cases; indeed, even more so than Delaware.

Courts analyzing the "economic interest of the estate"[2] prefer venues where "[m]ost of the entities and individuals expected to be responsible for the financial restructuring and development of a plan of reorganization in [the] case are located . . . or have ready access." *Enron*, 274 B.R. at 349. Key among this group are "Debtors' legal and financial advisors." *Id*. Debtors' legal counsel in this case has its founding office in Chicago, which is within walking distance from the bankruptcy court.

Chicago is also a central and easily-accessible location for other stakeholders and advisors located in all parts of the country. It is serviced by two major airports providing myriad options for travel for those not in Illinois. *See In re Enron Corp.*, 274 B.R. at 339 (explaining that, for similar reasons, New York "is convenient with respect to both the diversity of locations served and the frequency of service provided"); *see id.* at 345 ("The Debtors' multifaceted business enterprises affect parties throughout the nation and the world. New York's accessibility for all creditors (and stockholders) weighs in favor of a New York venue."). For travel from places like Las Vegas (where CEOC has many assets and operations) and California (where two of the Petitioners are located,[3] along with Petitioners' lead counsel), Chicago provides more flight options, including more direct flights, and decreased travel time when compared to

---

[1] A sixth factor—the necessity for ancillary administration if liquidation should result—has little bearing here, as Petitioners agree. (Mot. at 18 n.22.)

[2] Petitioners contend that this factor is the most important convenience factor. (Mot. at 3, 9.) Courts have cautioned that "this factor cannot be given the most weight in every case" because "[i]f it were, a forum such as the Southern District of New York would invariably trump other venues . . . ." *In re Patriot Coal Corp.*, 482 B.R. 718, 747 (Bankr. S.D.N.Y. 2012).

[3] OCM Opportunities Fund VI, L.P. and Special Value Expansion Fund, LLC have their principal places of business in California. Appaloosa Investment Limited Partnership I has its principal place of business in New Jersey.

Wilmington. *See, e.g.*, *In re Bruno's, Inc.*, 227 B.R. 311, 330 (N.D. Ala. 1998) (declining transfer to Delaware where "witnesses would be inconvenienced by travel to Delaware without access to direct airplane flights, change in time zone, and in some cases having to stay one or more nights away from their homes, family, and jobs."). Even for many in the northeast, Chicago is as convenient as Wilmington—given the frequency and short duration of direct flights from New Jersey and New York to Chicago:

**Representative Travel Times[4]**

|  | To Chicago | To Wilmington |
|---|---|---|
| **From Los Angeles** | Flight: **3:55** | Flight to Philadelphia: **4:53** |
| **From Las Vegas** | Flight: **3:35** | Flight to Philadelphia: **4:34** |
| **From New York** | Flight: **2:27** | Train: **1:28**; or Drive: **2:04** |
| **From Newark** | Flight: **1:49** | Train: **1:29**; or Drive: **2:05** |
| **From Chicago** | **No travel required** | Flight to Philadelphia: **1:59** |

Likewise, for many creditors, Chicago will be a more convenient forum than Delaware. Of the Second Lien Noteholders with whom CEOC was litigating pre-petition, the second-largest contingent (behind New York) is based in California. Others have their principal place of business in the Cayman Islands. *None* have their principal place of business in Delaware.

As explained above, CEOC and its affiliates have significant operations in Illinois, in the Midwest, and in Las Vegas. Key witnesses necessary for the administration of the estate likewise are generally located in those places. Petitioners even concede that CEOC has "major assets and operations" located in Illinois and other nearby states—and none in Delaware. (Mot. to Stay, Dkt. 17, at 4.) For all of these reasons, Chicago is the most convenient forum. Petitioners' own Exhibit B effectively portrays this point:

---

[4]   Travel times were calculated by searching kayak.com for representative durations of nonstop flights, and by reference to Google maps for representative train and driving travel time.

7



**C.    Petitioners advance no legitimate reasons why Chicago is an inferior forum.**

Petitioners advance two primary arguments for why venue in Chicago is unsuitable for the Debtors' cases. Neither has merit.

First, disregarding their burden of proof, Petitioners argue "upon information and belief" that most of CEOC's (and, thus, the Caesars Entities') largest financial creditors . . . are Delaware entities and/or located in the northeastern United States." (Mot. at 3.) That argument misleadingly conflates *place of incorporation* and *physical location*—only the latter matters for the convenience inquiry. *See, e.g.*, *In re Bruno's*, 227 B.R. at 330 ("Location . . . refers to the physical location of the parties, rather than their state of incorporation."). In fact, as noted above, *none* of the Petitioning Creditors has its principal place of business in Delaware.

Petitioners also argue that CEOC and some—though far from a majority—of its subsidiaries are incorporated or registered in Delaware. (Mot. at 4.) Given the commonality of incorporation or registration in Delaware, this fact carries little weight as a matter of logic, and carries no weight under the legal framework for evaluating venue. *See In re Bruno's*, 227 B.R. at 330. Indeed, Petitioning Creditors cite only one case that supposedly considers state of incorporation or registration as a relevant factor. (*See* Mot. at 4-5 ("[A]t least one court has held that the location of a debtor's membership interest in a limited liability company, for purposes of determining location of principal assets as part of venue determination, was the state in which such limited liability company was registered.") (citing *Montana Dep't of Revenue v. Blixseth (In re Blixseth)*, 484 B.R. 360, 370-71 (B.A.P. 9th Cir. 2012).) But that case addresses only the specific and narrow question of where assets reside for venue purposes when they consist only of *intangible equity interests*, the location of which is nebulous. *In re Blixseth*, 484 B.R. at 365 ("The sole issue in this appeal is whether . . . [Debtor's] principal assets, consisting of his intangible equity interests . . ., were located in Nevada."). That holding has no bearing on the present case, where Petitioners concede that the Debtors have "major assets and operations" located in Illinois—and none in Delaware. (Mot. to Stay, Dkt. 17, at 4.)

At bottom, then, Petitioners have advanced no legitimate—let alone compelling—rationale for why the Delaware venue is preferable. No doubt, their inability to do so is a result of the relevant factors overwhelmingly favoring Chicago as the better venue.

9

## **Conclusion**

Try as they might, Petitioners cannot pull Debtors' chapter 11 cases into Delaware. There is simply no basis to upset the Debtors' well-reasoned selection of the Northern District of Illinois as the appropriate forum in which to proceed with these cases.[5]

---

[5] Because Debtors felt it necessary and prudent to respond to Petitioners' brief as quickly as possible, they drafted this response in short order. Accordingly, Debtors reserve the right to supplement this response.

| | |
|---|---|
| Dated: January 15, 2015<br>Wilmington, Delaware | */s/ Domenic E. Pacitti*<br>Domenic E. Pacitti (DE Bar No. 3989)<br>**KLEHR HARRISON HARVEY BRANZBURG LLP**<br>919 N. Market Street, Suite 1000<br>Wilmington, Delaware 19801<br>Telephone:    (302) 426-1189<br>Facsimile:    (302) 426-9193<br>Email: dpacitti@klehr.com<br><br>- and -<br><br>Morton Branzburg (*pro hac vice* pending)<br>**KLEHR HARRISON HARVEY BRANZBURG LLP**<br>1835 Market Street, Suite 1400<br>Philadelphia, Pennsylvania 19103<br>Telephone:    (215) 569-2700<br>Facsimile:    (215) 568-6603<br>Email: mbranzburg@klehr.com<br><br>- and -<br><br>James H.M. Sprayregen (*pro hac vice* pending)<br>David R. Seligman, P.C. (*pro hac vice* pending)<br>**KIRKLAND & ELLIS LLP**<br>300 North LaSalle Street<br>Chicago, IL 60654<br>Telephone: (312) 862-7066<br>Facsimile: (312) 862-2200<br>Email: david.seligman@kirkland.com<br>        jsprayregen@kirkland.com<br><br>-and- |

Paul M. Basta, P.C. (*pro hac vice* pending)
Nicole L. Greenblatt (*pro hac vice* pending)
Christopher Greco (*pro hac vice* pending)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900
Email: paul.basta@kirkland.com
            christopher.greco@kirkland.com
            nicole.greenblatt@kirkland.com

Counsel to Caesars Entertainment Operating Company, Inc.