WHITE & CASE LLP
Thomas E Lauria (*pro hac vice to be filed*)
Southeast Financial Center, Suite 4900
200 South Biscayne Blvd.
Miami, FL 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
tlauria@whitecase.com

J. Christopher Shore (*pro hac vice to be filed*)
1155 Avenue of the Americas
New York, NY 10036
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
cshore@whitecase.com

*Counsel to the Ad Hoc Group of Holders of 10.75% Notes*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| CAESARS ENTERTAINMENT OPERATING COMPANY, INC., | Case No. 15-10047 (KG) |
| Alleged Debtor. | Re: Docket No. 35<br>Objection Deadline: TBD<br>Hearing Date and Time: TBD |

**JOINDER OF THE AD HOC GROUP OF HOLDERS OF THE 10.75% GUARANTEED NOTES TO THE MOTION OF THE PETITIONING CREDITORS TO STAY PARALLEL PROCEEDINGS OF CEOC**

The ad hoc group (the "Ad Hoc Group") of certain holders of 10.75% Senior Unsecured Notes due 2016 (the "10.75% Notes") issued by Caesars Entertainment Operating Company, Inc. ("CEOC" or "Debtor," and, collectively with its affiliates, "Caesars"), and

AMERICAS 90381989

guaranteed by certain wholly-owned domestic subsidiaries of CEOC (the "Subsidiary Guarantors"), under that certain indenture dated February 1, 2008, by and through its undersigned counsel, hereby files this joinder in support of the Motion of Appaloosa Investment Limited Partnership I, OCM Opportunities Fund VI, L.P. and Special Value Expansion Fund, LLC (collectively, the "Petitioning Creditors"), Pursuant To Section 105(a) Of The Bankruptcy Code And Bankruptcy Rule 1014(b), For An Order Staying Any Parallel Proceedings (the "Stay Motion"). In support of thereof, the Ad Hoc Group respectfully represents as follows:

## JOINDER

1. The 10.75% Notes consist of approximately $478.6 million in aggregate face amount of unsecured debt obligations of CEOC. Unlike every other tranche of CEOC's approximately $18 billion in notes or loans, however, the 10.75% Notes also have direct, enforceable, prepetition guarantee claims against all of the Debtor's wholly-owned Subsidiary Guarantors, including subsidiaries that, early this morning, filed chapter 11 petitions in the United States Bankruptcy Court for the Northern District of Illinois (the "Illinois Court").

2. Uniquely situated within Caesars' complex capital structure, the 10.75% Notes are the beneficiaries of a prepetition lending structure in which CEOC's secured creditors, who hold non-recourse assets pledges, expressly waived any deficiency claims they might have against the Subsidiary Guarantors "under any law." Thus, the Notes are the only tranche of CEOC funded debt that may directly recover from unencumbered assets of the Subsidiary Guarantors. Based upon recent bankruptcy filings, those estates unencumbered assets are substantial and include, at the least, all of the Subsidiaries' "cage cash." The 10.75% Notes also stand apart from CEOC's other debt issuances in that their holders, including members of the Ad Hoc Group, were not included in any pre-bankruptcy negotiations regarding any restructuring,

were not consulted with respect to the timing or location of any bankruptcy filings of their Debtors, and did not participate in any of the myriad of prepetition litigation regarding CEOC's restructuring efforts.

3. In support of this joinder, the Ad Hoc Group believes that this Court, not Illinois Court, must determine the appropriate venue for the Case as soon as possible to avoid any potential operational risks for the overall Caesars enterprise and to avoid materially conflicting outcomes. This Court should also reject CEOC's efforts to have this Court either transfer or dismiss this Case in favor of the later filed CEOC case pending in the Illinois Court.

4. CEOC's opposition to the Stay Motion, and its insistence that its later filed voluntary petition take precedence, is troubling for two reasons.

5. <u>First</u>, in both its opposition and in the first day pleadings it filed in the Illinois Court, CEOC has stated that it intends to move to dismiss this Case as part of its strategy to effectuate its prepetition RSA. That result would be manifestly unfair to unsecured creditors of CEOC and the Subsidiary Guarantors. To inform the Court, in its first day pleadings, CEOC admits that 91 days ago, on October 16, 2014, certain Caesars entities entered into deposit account control agreements (the "<u>Control Agreements</u>") with the collateral agent for certain first lien notes in order to perfect their interests in lienable cash. The Petitioning Creditors filed CEOC's involuntary chapter 11 petition on January 12, 2015 – <u>i.e.</u>, 88 days after entry into the Control Agreements. CEOC and the Subsidiary Guarantors, on the other hand, filed for relief on January 15, 2015 – <u>i.e.</u>, 91 days after the announced effectiveness of the Control Agreements (the "<u>91st Day Filing</u>"). A dismissal of this Case, as advocated by CEOC, would in effect insulate any non-insider preferential transactions that took place on October 14, 15 and 16, 2014. The Ad Hoc Group takes no position with respect to whether the Control Agreements could be

avoided as a preferential transfer – that is a matter for an estate fiduciary to take up as this Case proceeds. But, the fact remains that CEOC has admitted in its pleadings that it entered into dozens of pre-bankruptcy planning transactions, that it preferred certain creditors in some of those transactions, that it timed the filings of petitions strategically to let the clock run, and that it will be seeking to have this Court assist it in allowing the clock to have run by dismissing the earlier case. There should be no dismissal until an unconflicted estate fiduciary is given time to analyze all of the transfers that occurred between the 88th and 91st days, which would likely include transfers other than the Control Agreements, to determine the effect of a dismissal on the quantum of estate assets available for distribution to creditors. In short, even if the Control Agreement transaction was entirely proper (again as to which the Group takes no position), the continued existence of this Case could have material implications for unsecured creditor recoveries from unencumbered assets.

6. Given the possibility of recovery-determinative outcomes depending on which case proceeds, the issue of the proper venue for the first day hearings for CEOC could be critical. For example, CEOC has announced in the Illinois Court that it intends to file (but has apparently not yet filed) a cash collateral motion that will seek to grant replacement liens on unencumbered assets, presumably including avoidance actions. Based on differing precedents in the Third and Sixth Circuits, whether that relief is permissible, much less appropriate given the strategic timing of the two Cases, could have materially differing answers depending on which Court hears that motion. And, while the issue of venue is not a proper issue for today, we note that both sides to the dispute have their reasons for filing where they did, that Illinois was not an option for the Petitioning Creditors (who only hold claims at CEOC), and that no party has yet advocated for a filing in Caesars' home jurisdiction, Nevada.

7. <u>Second</u>, CEOC's statements asserting the importance of the venue choice of the Subsidiary Guarantors in the Illinois Court are demonstrably at odds with Caesars' pre-petition conduct. For months, CEOC has been negotiating with its secured creditors, and the Ad Hoc Group understands that these discussions did not involve any holder of 10.75% Notes. As such, all the touted prepetition discussions did not involve the existing prepetition creditors of the Subsidiary Guarantors. In that regard, unlike the 10.75% Notes, the various tranches of CEOC's secured debt only benefit from asset pledges from certain of CEOC's subsidiaries. <u>See</u> First Lien Collateral Agreement § 4.01 ("As security for the payment or performance, as the case may be, in full of the Obligations, each Pledgor hereby assigns and pledges . . . a security interest[.]"); Second Lien Collateral Agreement § 4.01 (stating the same). In fact, each of those secured creditors contractually waived their right to assert any claims against the Subsidiary Guarantors. <u>See</u> First Lien Collateral Agreement § 7.18 ("Notwithstanding anything to the contrary in this Agreement, no recourse shall be had, whether by levy or execution, or under any law . . . ."); Second Lien Collateral Agreement § 7.17 (stating the same). Given the absences of any secured claims at the Subsidiary Guarantors, the managers and directors of the CEOC, without the involvement of any independent fiduciary at any Subsidiary Guarantors, appear to have negotiated exclusively with creditors who simply did not exist. In short, the only conceivable benefit protected by laying the venue of the Subsidiary Guarantors' cases in the Illinois Court would be to respect the wishes of CEOC, which is already a debtor in <u>this</u> Court.

**RESERVATION OF RIGHTS**

8. The Ad Hoc Group expressly reserves its right to supplement and amend this Statement. Further, the Ad Hoc Group reserves the right to seek discovery with respect to the

Stay Motion and introduce evidence at any hearing relating to the Stay Motion.  Further, the Ad Hoc Group reserves the right to respond, join in or amend this Statement with respect to any argument or objection made by any person relating to the Stay Motion.

## **CONCLUSION**

9.  Based on the foregoing, the Ad Hoc Group respectfully requests that the Court (i) grant the Stay Motion; and (ii) grant such other and further relief as the Court deems just.

[*Remainder of page intentionally left blank*]

Dated: January 15, 2015
       Wilmington, Delaware

                                        By:   /s/ J. Christopher Shore

                                                 J. Christopher Shore (*pro hac vice to be filed*)
                                                 1155 Avenue of the Americas
                                                 New York, NY 10036
                                                 Telephone:  (212) 819-8200
                                                 Facsimile:  (212) 354-8113
                                                 cshore@whitecase.com
                                                 hdenman@whitecase.com

                                                 Thomas E Lauria (*pro hac vice to be filed*)
                                                 WHITE & CASE LLP
                                                 Southeast Financial Center, Suite 4900
                                                 200 South Biscayne Blvd.
                                                 Miami, FL 33131
                                                 Telephone:  (305) 371-2700
                                                 Facsimile:  (305) 358-5744
                                                 tlauria@whitecase.com

                                               *Counsel to the Ad Hoc Group of Holders of 10.75% Notes*